## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| QUENTIN B. TRUSS, | ) |
| AIS # 181630, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No.  2:16-cv-01326-AKK-JHE |
| | ) |
| LATASHA TERRELL, et al., | ) |
| | ) |
| Defendant, | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States while he was detained at Donaldson Correctional Facility, in Bessemer, Alabama.  (Doc. 1).  The plaintiff names as defendants Correctional Officer Latasha Terrell, COI Gregoree Haywood, COI J. Tunstall, COI T. Turnbull, COI Dana Freeman, COI Marks, COI R. Evans, Sgt. M. Jenkins, Lt. Wallace Peterson, and Warden Cedric Specks. (*Id.* at 3, 8-12; doc. 8).  The plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.* at 4).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I.  Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a

claim upon which relief can be granted.  *Id.*  Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist.  *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 557 (2007) (alteration incorporated).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones,* 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Factual Allegations

The plaintiff is an inmate in the custody of the Alabama Department of Corrections at Donaldson Correctional Facility in Bessemer, Alabama. (Doc. 1 at 2).  The plaintiff alleges that on April 16, 2015, defendant COI Tunstall told the plaintiff to report to the X-Y Corridor, because defendant CO Terrell wanted to see him.  (*Id*. at 5).  The plaintiff complied and found defendant COI Turnbull, defendant COI Marks, defendant COI Haywood, COI Tunstall, and CO Terrell waiting for him.  (*Id*.).  Defendant Officer Dana Freemen then arrived and identified the plaintiff as the inmate "who disrespect her."  (*Id*.).  COI Haywood punched the plaintiff in the face, and COI Turnbull, CO Terrell, and COI Tunstall joined in.  (*Id*.).  The plaintiff broke away and began backing up the corridor, but COI Turnbull and Tunstall hit the plaintiff in his legs with their batons.  (*Id*.).  COI Haywood then maced the plaintiff.  (*Id*.).  The plaintiff ran from the corridor as a "code red" was called.  (*Id.*, at 6).  He ended up handcuffed on the ground in front of the infirmary.  (*Id.*).

Once in the infirmary, Officer Clark (non-party) put the plaintiff in the shower to decontaminate his eyes, but defendant Warden Specks made Officer Clark remove the plaintiff too quickly, and then used his authority as warden to prevent Nurse Green (non-party) from doing a thorough examination of the plaintiff for his body chart.  (Doc. 1 at 6).

Defendant Lt. Peterson was the investigator of the April 16, 2015 incident, but denied the plaintiff a use of force statement.  (Doc. 1 at 6-7).  Defendant Sgt. Jenkins helped cover up the

use of force by orchestrating a false disciplinary report. (Doc. 1 at 7). Although the plaintiff was found not guilty of those charges,[1] Sgt. Jenkins created another disciplinary report accusing the plaintiff of assaulting CO Terrell in X-Y corridor. (*Id., see also* doc. 1-2 at 6-10). The plaintiff was found guilty of those charges. (*Id.* at 8-10).

On August 28, 2015, after the plaintiff was placed in segregation, defendant COI Evans threatened to retaliate against the plaintiff, claiming that the plaintiff attacked CO Terrell, and has continued to harass the plaintiff since then. (Doc. 1 at 7-8).

### III. Analysis

### A. Defendants CO Terrell, COI Haywood, COI Tunstall, and COI Turnbull

The plaintiff asserts excessive force claims against Defendants CO Terrell, COI Haywood, COI Tunstall, and COI Turnbull. (Doc. 1 at 8-9). Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). An Eighth Amendment claim for the excessive use of force requires a two-prong showing: an objective showing of a deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing that the official had a "sufficiently culpable state of mind." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (citations omitted).

Under the objective prong, the court must consider "whether force was applied with good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

---

[1] That disciplinary report reflects that the plaintiff was found not guilty of the April 16, 2015 charges based on a procedural due process error in providing him notice. (Doc. 1-2 at 6-7).

An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* at 38 (citing *Hudson*, 503 U.S. at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))). The Eighth Amendment's prohibition of 'cruel and unusual' punishments excludes from constitutional recognition *de minimis* uses of physical force, provided however that the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. at 9-10 (citation omitted). Accordingly, the plaintiff must suffer more than a *de minimis* injury to establish an Eighth Amendment violation, although significant injury is not required. *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

As to the subjective prong of the analysis, a plaintiff must show that a prison official's actions amounted to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). And, "[f]orce is deemed legitimate in a custodial setting only as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320-21)) (alteration in original); *see also Johnson v. Moody*, 206 Fed. App'x 880, 883 (11th Cir. 2006) (stating that the subjective prong of an excessive force analysis considers whether force is applied in good faith or maliciously). In determining whether an application of force was justly applied, the court considers a variety of factors, including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat reasonably perceived by the responsible

officials, [] any efforts made to temper the severity of a forceful response," and the extent of any injuries. *Hudson*, 503 U.S. at 7; *see also Whitley*, 475 U.S. at 321.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Government officials may not employ "gratuitous force against a prisoner who has been already subdued . . . ." *Skrtich*, 280 F.3d at 1303 (citation omitted). However, the *Whitely* factors must be viewed with "a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

At this stage in the litigation, the court takes the facts alleged by the plaintiff as true. *See* Standard of Review, *surpa*. Therefore, the excessive force claim should proceed against Defendants CO Terrell, COI Haywood, COI Tunstall, and COI Turnbull.[2] Given the plaintiff's allegations, any need for force by these defendants not in response to any threat from the plaintiff, but was of their own making. According to the plaintiff, he was summoned to the X-Y corridor by officers. (Doc. 1 at 5). Once there, COI Freeman identified the plaintiff as the inmate who "disrespected" her. (*Id.*). COI Haywood asked the plaintiff why he disrespected her, and officers and punched the plaintiff in the face. (*Id.*). Under this set of facts, any force used against the plaintiff was necessarily applied "maliciously and sadistically to cause harm."

---

[2] Although the plaintiff also states an excessive force claim against COI Freeman, he clarifies that the allegations against her are based on "non-feasance" for not trying to stop her co-workers from attacking the plaintiff. (Doc. 1 at 10). Thus, the undersigned considers the plaintiff's claims against COI Freeman under the failure to protect analysis, *infra*.

As such, the recommendation is that the excessive force claims against defendants CO Terrell, COI Haywood, COI Tunstall, and COI Turnbull go forward.

### B. Defendants COI Freeman and COI Marks

The plaintiff asserts COI Freeman and COI Marks failed to protect him from attack by CO Terrell, COI Haywood, COI Tunstall, and COI Turnbull.  (Doc. 1 at 9-10).  The Eighth Amendment prohibits deliberate indifference to an inmate's health or safety, *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002), and "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates," *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations omitted).  "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301; *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). As with other Eighth Amendment claims, a plaintiff must show a "substantial risk of serious harm" and that the defendants were "deliberately indifferent" to that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The court applies an objective standard when examining the first element, a substantial risk of serious harm.  *Caldwell*, 748 F.3d at 1099 (citing *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  The second element---the defendant's deliberate indifference to that risk---has two components, one subjective and one objective.  To meet the subjective prong, a plaintiff must produce evidence that the defendant "actually (subjectively) knew that an inmate faced a substantial risk of serious harm."  *Caldwell,* 748 F.3d at 1099 (citing *Rodriguez v. Sec'y*

*for Dep't of Corr.,* 508 F.3d 611, 617 (11th Cir. 2007)) (alterations omitted).  To satisfy the objective component of the second element, a plaintiff must produce evidence the defendant "disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.*

   "[D]eliberate indifference describes a state of mind more blameworthy than negligence," and an "ordinary lack of due care for a prisoner's interest or safety" will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 835.  Rather, a plaintiff must show "conduct that is more than gross negligence."  *Goodman v. Kimbrough* 718 F.3d 1325, 1332 (11th Cir. 2013).  The allegations must rise to the level of "a conscious or callous indifference to a prisoner's rights."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).  A constitutional violation occurs only when a plaintiff establishes "a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk . . . .'"  *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (quoting *Farmer*, 511 U.S. at 844).

   According to the allegations of the plaintiff's complaint, COI Freeman identified the plaintiff as the inmate "who disrespect [sic] her[,]" and COI Marks was present in the X-Y corridor.  (Doc. 1 at 5).  Although the plaintiff does not allege either of these officers hit him, they did nothing to prevent the other officers present from beating the plaintiff with their fists and batons.  Rather, the plaintiff alleges "Officer Marks panic got Cadet Freeman who was the cubical officer to open the front door in the corridor that goes to the main hallway.  For she could leave the scene before code red be call, being off her assign post.  Cadet Freeman open the front door for Officer Marks because she was afraid by situation got out hand without a supervisor

presence." (*Id.*, at 5-6) (grammatical errors in original).  Rather than protect the plaintiff, these two officers tried to avoid being caught in the situation completely.  According to these allegations, COI Freeman and COI Marks were subjectively aware of substantial risk of harm to which they did not response reasonably; therefore, the undersigned recommends the failure to protect claims against COI Marks and COI Freeman go forward.

## C. Defendant COI Evans

The plaintiff asserts COI Evans attempted to retaliate against him by harassing him several months later while the plaintiff was in segregation and alleges COI Evans made sexually offensive remarks. (Doc. 1 at 7-8, 12-13).  Verbal abuse alone is insufficient to state a constitutional claim.  *Hernandez v. Florida Dep't of Corr.*, 281 Fed. App'x 862, 866 (11th Cir. 2008) (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989)).  And, verbal harassment of a prisoner by a prison guard, without more, does not violate any constitutional right.  *See Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983) ("mere threatening language and gestures . . . do not, even if true, amount to constitutional violations"); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's threats to hang inmate did not rise to the level of a constitutional claim).  Nothing in the plaintiff's allegations suggests that a violation of the plaintiff's constitutional rights occurred.

Considering whether the plaintiff has stated a claim for retaliation against COI Evans, "[t]he First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  To state a claim for retaliation, a prisoner must allege that "(1) his speech was constitutionally protected;

(2) the inmate suffered adverse action such that the allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008)).

The plaintiff's allegations do not satisfy any of these elements. Rather, the plaintiff asserts that COI Evans retaliated against him based on CO Terrell's allegations against the plaintiff from April 2015, and not based on any protected activity by the plaintiff. Because the plaintiff fails to allege a First Amendment retaliation claim or any other constitutional claim against COI Evans, all claims against this defendant should be dismissed pursuant to 28 U.S.C. § 1915A(b).

## D.  Defendants Sgt. Jenkins, Lt. Peterson, and Warden Specks

### 1.  Supervisory Liability

Construing the plaintiff's complaint liberally, the plaintiff asserts that defendants Sgt. Jenkins, Lt. Peterson, and Warden Specks helped cover up the "excessive force." (Doc. 1 at 10-12).  Additionally, the plaintiff alleges Lt. Peterson and Warden Specks, as supervisors, failed to investigate the plaintiff's allegations of excessive force.  To the extent the plaintiff asserts liability against these defendants in their role as supervisors, his complaint fails to state a claim. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).  A plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in

the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). The showing this standard requires is "extremely rigorous." *Cottone*, 326 F.3d at 1360. The plaintiff asserts no facts that demonstrate Sgt. Jenkins, Lt. Peterson, or Warden Specks was involved with or approved of any violation of the plaintiff's constitutional rights.

Because the plaintiff alleges no set of facts under which any of these supervisors could be found to have directly participated in the April 16, 2015 incident, the undersigned next must examine whether the plaintiff can establish a causal connection between any of the supervisors' actions and the alleged constitutional violations. A causal connection can be established when a history of widespread abuse puts the supervisor on notice of the need to correct a deprivation and the supervisor fails to do so. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). An allegation about an isolated incident is not enough to state a claim for deliberate indifference against a supervisor, *Gross v. White*, 340 Fed. App'x 527, 531 (11th Cir. 2009), as that fails to demonstrate "a conscious or callous indifference to a prisoner's rights" that "was a cause of the constitutional depravation," *Williams*, 689 F.2d at 1380.

Here, the plaintiff alleges that Lt. Peterson helped cover up the excessive force and refused to complete a "use of force" statement, violating the plaintiff's due process rights to a fair investigation. (Doc. 1 at 10). However, the plaintiff's allegation that Lt. Peterson should have investigated the incident is simply another way of attempting to impose supervisory liability. *See Hyland v. Kolhage*, 267 Fed. App'x 836, 841 (11th Cir. 2008); *Roy v. Johnson*, 97 F.Supp.2d 1102, 1112 (S.D.Ala. 2000) (claim of failure to investigate incident "fails to present a claim for violation of a constitutional right"); *Johnson v. Hinsley*, 2010 WL 966651, *4 (N.D.

11

Ga. 2010) ("failure to investigate an incident, without more, does not violate any constitutional rights"); *Rodriguez v. Chatman*, 2015 WL 4162980, *5 (M.D. Ga. 2015) ("liability . . . cannot be imposed based on a prison official's . . . failure to take disciplinary action against the officer at fault.").

The plaintiff also alleges that, as Warden when the incident occurred, defendant Warden Specks should be liable. (Doc. 1 at 10-11). Additionally, the plaintiff alleges Warden Specks would not allow Nurse Green to decontaminate the plaintiff's eyes or perform a low body examination for a body chart.[3] (*Id*., at 11). He contends "[d]efendant [Warden] Specks [is] legally liable an[d] fail[ed] in his supervisor duties to protect [the plaintiff]. . . . (*Id*.) (alterations added). As noted, no liability attaches to supervisors on the basis of respondeat superior. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Without any assertion that any of these events were more than an isolated incident, Warden Specks cannot be held liable solely in role as a supervisor. *Hyland*, 267 Fed. App'x at 842.

The plaintiff also asserts that Sgt. Jenkins was the hearing officer on the assault charge brought against the plaintiff by CO Terrell. (Doc. 1 at 11). The plaintiff alleges Sgt. Jenkins was biased and helped cover up the excessive force. (*Id*.). The plaintiff further states that Sgt. Jenkins "wrote plaintiff another bogus disciplinary report . . . ." (*Id*.).[4] Thus, the plaintiff contends Sgt. Jenkins should be liable for violations of his "supervisory duties to be fair." (*Id.*, at 11-12). The plaintiff's allegation that Sgt. Jenkins created a falsified report does not state a

---

[3] The plaintiff does not assert a claim for deliberate indifference to medical needs, and his allegations do not rise to a level that such a claim could be construed under the facts alleged.

[4] The first disciplinary report on April 16, 2015, stated that CIO Freeman saw the plaintiff engaged in a lewd act. (Doc. 1-2 at 6). The second disciplinary report, from that same day, accused the plaintiff of assaulting CO Terrell in the X and Y block corridor. (*Id*., at 8).

constitutional violation.  *Owens v. Leavins*, 2006 WL 2640275, *2 (N.D. Fla. 2006) (the constitution requires only that the plaintiff be afforded due process at the institutional hearing, which represents his opportunity to expose any such falsities).  Rather, as explained below, such a claim is analyzed in the context of whether the plaintiff received proper due process in the hearing stemming from the allegedly false report.  *See e.g, Asad v. Crosby*, 158 Fed. App'x 166, 172-73 (11th Cir. 2005); *Flynn v. Scott*, 2006 WL 1236718, *4 (M.D. Ala. 2006) (the plaintiff "merely asserts that Defendants based the disciplinary notice on false information.  This does not state a claim for relief.").  Accordingly, the plaintiff's allegations fail to support the possibility of a causal connection exists between any of these supervisors' actions and the alleged constitutional violation.  *Harrison*, 746 F.3d 1288 at 1298.

### 2.  Fourteenth Amendment Claims

The plaintiff claims that these three defendants violated his equal protection and due process rights by allowing the disciplinary action against him to proceed and failing to investigate the use of force against him.

#### a. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  The Equal Protection Clause requires the government treat similarly situated people in a similar manner.  *See City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). The plaintiff makes a vague assertion that each of these defendants violated his Fourteenth Amendment right of equal protection.

To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr*., 467 F.3d 1311, 1318-19 (11th Cir. 2006). Even the most liberal interpretation of the plaintiff's *pro se* complaint does not reveal any factual basis for an equal protection claim. The plaintiff alleges neither that he was similarly situated to other prisoners who received more favorable treatment, nor that the difference in treatment stemmed from race, religion, national origin or any other constitutionally protected basis. At most, the plaintiff asserts he was treated unfairly, based on COI Freeman's allegations against him. *See e.g., Bursey v. Ameigh*, 2010 WL 3119389, *3 (M.D. Fla. 2010). Unfair is not synonymous with unconstitutional. Any claim brought under the Fourteenth Amendment Equal Protection Clause is therefore due to be dismissed.

### b. Due Process Claims

The plaintiff alleges the supervisory defendants violated his due process rights as follows: Lt. Peterson violated his right to a fair investigation, Sgt. Jenkins violated his right to "fairness," and Warden Specks violated his right to a fair hearing. (Doc. 1 at 10-12).

The due process clause provides two types of protections: procedural due process and substantive due process. A violation of either may form the basis for a suit under § 1983. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). Substantive due process protects against "government interference with certain fundamental rights and liberty interests." *Williams v. Att'y Gen. of Ala*., 378 F.3d 1232, 1235 (11th Cir. 2004) (citation omitted). Because "conduct by a government actor will rise to the level of a substantive due process violation only

if the act can be characterized as arbitrary or conscience shocking in a constitutional sense," *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003), and "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id.*, the court interprets the plaintiff's claims relating to his disciplinary hearings as alleging procedural due process violations, as the conduct in question is not "conscience shocking in a constitutional sense."

Procedural due process for prisoners facing disciplinary actions requires "(1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals." *Wallace v. Hamrick,* 229 Fed.App'x 827, 831 (11th Cir. 2007) (quoting *Young v. Jones*, 37 F.3d 1457, 1459-60 (11th Cir. 1994)). An actionable constitutional violation arises "only when the state refuses to provide a process sufficient to remedy the procedural deprivation . . . ." *McKinney*, 20 F.3d at 1557.

The plaintiff alleges Sgt. Jenkins assisted in creating a false report and that Warden Specks allowed the plaintiff to be found guilty based on that false report.[5] (Doc. 1 at 11-12). As previously explained, a false report alone does not violate any constitutional right. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986). Rather, the disciplinary process resulting from a false report carries that potential. "The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law." *Id.* Here, the plaintiff's

---

[5] As noted in the facts section *infra*, the plaintiff was found not guilty as to initial charges, based on a due process insufficiency; however, Sgt. Jenkins created another disciplinary report accusing the plaintiff of assaulting CO Terrell in X-Y corridor. (Doc. 1 at 7; *see also* doc. 1-2 at 6-10).

allegations and exhibits attached to his complaint do not show that any violation of his procedural due process rights occurred.  The due process requirements in prison disciplinary proceedings include advance written notice of the charge, the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence and reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).  The plaintiff's attachments to his complaint demonstrate that each of these requirements was met.  Specifically, the plaintiff was presented advanced notice of the charges against him, he was allowed to present witnesses and documentary evidence, and a written statement of the evidence and the reasons for the disciplinary action were presented to him.  (Doc. 1-2 at 8-13).

The plaintiff's allegations reflect that his complaint is based on what he states is an unjust decision, and not the process he was afforded.  However "[w]hether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel."  *O'Bryant*, 637 F.3d at 1215.  To hold otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance.  *Id*. 637 F.3d at 1216.

Additionally, even though the plaintiff received disciplinary segregation based on the disciplinary report, disciplinary segregation does not present the type of atypical, significant deprivation, necessary for procedural due process to attach.  *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995).  Because the plaintiff's confinement to disciplinary segregation is not a "type of atypical, significant deprivation" under *Sandin.*, and because the plaintiff was afforded

disciplinary hearings which met the requirements of *Wolff*, 418 U.S. at 563-66, no procedural due process violation occurred.

Although the plaintiff blames Sgt. Jenkins for the disciplinary hearing, that decision was upheld by Warden Specks.  Thus, regardless of the plaintiff's allegations against Sgt. Jenkins, Sgt. Jenkins alone could not keep the plaintiff in disciplinary confinement without Sgt. Jenkins' supervisor finding cause to do so.  For purposes of the plaintiff's due process claim, both Warden Specks and Sgt. Jenkins accepted CO Terrell's version of events over the plaintiff's version.  As the Eleventh Circuit has ruled, "[b]ecause [t]he [plaintiff] was guilty of the disciplinary charges resulting in the disciplinary harm at issue, [the plaintiff]'s . . . claim fails."  *O'Bryant*, 637 F.3d at 1216.  For the same reason here, the plaintiff's claim for due process violations should be dismissed.

### IV. Recommendation

Accordingly, for the reasons stated above, the undersigned **RECOMMENDS** as follows:

1.   All claims against defendants COI Evans, Sgt. Jenkins, Lt. Peterson, and Warden Specks be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1); and

2.   the remaining claims, the plaintiff's excessive force claims against defendants CO Terrell, COI Haywood, COI Turnstall, and COI Turnbull as well as the plaintiff's failure to protect claims against defendants COI Freeman and COI Marks be referred to the undersigned magistrate judge for further proceedings.

## V.  Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint which the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

DONE this 12th day of June, 2017.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

18